Fill in this information to identify your case:

Debtor 1  Timothy J. Rosen
         First Name    Middle Name    Last Name

Debtor 2 _____
(Spouse, if filing) First Name   Middle Name    Last Name

United States Bankruptcy Court for the: Northern District of Indiana

Case number  18-40069
(If known)

## Official Form 427
## Cover Sheet for Reaffirmation Agreement    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**  Performance Finance
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $ 4,506.67
To be paid under the reaffirmation agreement  $ 4,506.67
$ 122.05 per month for 56 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed  18.99 %
Under the reaffirmation agreement  18.99 %  ☑ Fixed rate  ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral. 2009 HARLEY DAVIDSON FXD DYNA, VIN 1HD1GM4149K323218
Current market value  $ 6,720.00

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 3,097 | 6e. Monthly income from all sources after payroll deductions | $ 3,097 |
| 6b. Monthly expenses from line 22c of Schedule J | $ 3,045 | 6f. Monthly expenses | – $ 3,045 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | – $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | – $ 0 |
| 6d. Scheduled net monthly income. Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ 52 | 6h. Present net monthly income. Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ 52 |

Official Form 427       Cover Sheet for Reaffirmation Agreement       page 1

Debtor 1  Timothy J. Rosen
         First Name   Middle Name   Last Name

Case number (if known) 18-40069

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☐ No<br>☐ Yes. Explain why they are different and complete line 10. _____ | |
| 8. Are the expense amounts on lines 6b and 6f different? | ☐ No<br>☐ Yes. Explain why they are different and complete line 10. _____ | |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. | |
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>x _Timothy J Rosen_<br>Signature of Debtor 1<br><br>x _____<br>Signature of Debtor 2 (Spouse in a Joint Case) | |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☐ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☐ Yes | |

**Part 2:  Sign Here**

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

x _[signature]_____  Date 04/30/2018
Signature                                                    MM / DD / YYYY

_Noe Spaller_____
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☐ Creditor or Creditor's Attorney

Official Form 427          Cover Sheet for Reaffirmation Agreement          page 2

Form 2400A (12/15)

> Check one.
> ☐ Presumption of Undue Hardship
> ☒ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Northern District of Indiana

In re  Timothy J. Rosen ,   Case No. 18-40069
*Debtor*

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Performance Finance

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Promissory Note & Security Agreement
*For example, auto loan*

B. **AMOUNT REAFFIRMED**:   $          4,506.67

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is   18.9900 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☒ Fixed rate   ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                                                          Page 2

D. **Reaffirmation Agreement Repayment Terms** *(check and complete one)*:

☐  $_____ per month for _____ months starting on _____.

☑  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$122.05/mo. until paid in full. Except as modified below, the terms of the attached Promissory Note and Security Agreement are hereby incorporated by reference. This reaffirmation agreement is void if the underlying security agreement is determined to be unenforceable or invalid by the Bankruptcy or other Court of competent jurisdiction.

E. Describe the collateral, if any, securing the debt:

Description:             2009 Harley Davidson...323218
Current Market Value     $                    6,720.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?     $           6,999.00

☐ No. What was the amount of the original loan?           $

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|                                          | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $  4,506.67 | $  4,506.67 |
| Annual Percentage Rate                   | 18.9900 %   | 18.9900 %   |
| Monthly Payment                          | $  122.05   | $  122.05   |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.  ☑ Yes     ☐ No

B. Is the creditor a credit union?

Check one.  ☐ Yes     ☑ No

Form 2400A, Reaffirmation Documents                                                                 Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income)                                           $ 3,097

    b. Monthly expenses (including all reaffirmed debts except
    this one)                                                                        $ 2,921

    c. Amount available to pay this reaffirmed debt (subtract b. from a.)            $ 178

    d. Amount of monthly payment required for this reaffirmed debt                   $ 122

    *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                                                 Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4/16/18    Signature X _Timothy A. Rose_ /Debtor

Date _____    Signature X _____ Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor _Performance Finance c/o Capital Recovery_    _1790 E River Rd Ste 101 Tucson, AZ 85718_
            Print Name                                                              Address

_Nichlas P. Spallas_                    Signature _____    Date _4.30.18_
Print Name of Representative

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _4/12/18_    Signature of Debtor's Attorney _J. Felth_

                    Print Name of Debtor's Attorney _JERRY FELTH_

**PERFORMANCE FINANCE**
*A division of Evergreen Bank Group*

## PROMISSORY NOTE, DISCLOSURE AND SECURITY AGREEMENT

Performance Finance
A division of Evergreen Bank Group
P.O. Box 17879
Reno, NV 89511

| Borrower Name and Address | Co-Borrower or Co-Signer Name and Address | Dealer Name and Address |
|---|---|---|
| TIMOTHY J ROSEN<br>417 WOODSEDGE CT<br>WEST LAFAYETTE, IN 47906 | , | Indian Motorcycle of Lafayette<br>1165 S Creasy<br>LAFAYETTE, IN 47905 |

**PROMISE TO PAY:** You (meaning all borrowers, jointly and severally) promise to pay to the order of Performance Finance, a division of Evergreen Bank Group, any and all amounts due under this Promissory Note, Disclosure and Security Agreement ("Contract"), including, but not limited to, the principal amount shown below plus daily simple interest at the Contract interest rate of __18.99__ from the date You sign this Contract until Your loan is paid in full. Interest will be charged on a daily basis of 1/365 beginning on the date hereof until all amounts owed on this Contract are repaid. You further agree to pay any Late Charge, Return Fee or other fees, costs or other charges provided for in this Contract. You agree to make regular monthly payments in U.S. Dollars in accordance with the payment schedule shown below. You may prepay all or any part of the unpaid principal balance without paying any penalty. If You prepay, we will not refund to You any portion of the finance charge.

**DESCRIPTION OF COLLATERAL:** To secure the payment and performance of the obligations arising under this Contract, Borrower grants Lender a security interest in the property described below ("Collateral")(as more fully described in the Additional Terms and Conditions of this Contract).

| New / ☒ Used | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| ☒ Used | 2009 | HARLEY-DAVIDSON FXD DYNA SUPER GLIDE | 1HD1GM4149K323218 |

**THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE FOLLOWING PAGES ARE A PART OF THIS CONTRACT**

### TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 18.99 % | $ 2617.00 (e) | $ 4706.00 | $ 7323.00 (e) |

(e) means an estimate

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | 122.05 | Monthly Beginning 01/12/2018 |

**Security Interest:** You are giving Us a security interest in the Collateral being purchased.
**Property Insurance:** You understand that You may be required to purchase property insurance on the Collateral. You can buy this insurance through any person of Your choosing acceptable to Us (please see below for what could happen if You do not maintain such insurance).
**Late Charge:** If a payment is more than 10 days late, You will be charged five percent (5%) of the full amount of the scheduled payment.
**Prepayment:** If You pay off some, or all, of Your loan early, You will not have to pay a penalty and will not be entitled to a refund of any part of the finance charge already paid. See the Additional Terms and Conditions below regarding nonpayment, default, and any required prepayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including any accessories, extras and services) ............................................. $ 6999.00 (1)
2. Sales Tax ........................................................................................................................... $ 0.00 (2)
3. Total Downpayment = Net Trade-in $ __2415.00__ + Cash Downpayment $ __0.00__
   Your Trade-in is a _____ $ 2415.00 (3)
4. Unpaid Balance of Cash Price (Amount paid on Your Account) (1+2 minus 3) paid to dealer ......... $ 4584.00 (4)
5. Amounts Paid to Others on Your Behalf:

   A. To: Public Officials For Title, License, Lien Fee and Registration Fees (Itemize) ......... $ 0.00

   B. Other Charges (Identify Who Must Receive Payment and Describe Purpose)
   - To: _____ For Service Contract $ 0.00 *
   - To: _____ For GAP Insurance $ _____ *
   - To: _____ For Tire and Wheel $ 0.00 *
   - To: _____ For Prepaid Maintenance $ 0.00 *
   - To: Other Taxable / Non-Taxable For Other $ 122.00 *

   Total Other Charges and Amounts Paid to Others on Your Behalf ..................... $ 122.00 (5)
6. Amount Financed/Principal Amount (4+5) ............................................. $ 4706.00 (6)

*Dealer may share in or receive a portion of these amounts.

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

_Timothy J Rosen_    12/12/17
Borrower's Signature    Date    Co-Borrower's/Co-Signer's Signature    Date

## ADDITIONAL TERMS AND CONDITIONS

**ADDITIONAL TERMS AND CONDITIONS.** Please see below for additional terms and conditions. You are bound by these terms in the same manner as if they were printed on the first page of this Contract.

**SIGNATURE.** By signing this Contract, You agree to all terms of this Contract and request Us to issue the proceeds of this Note. You acknowledge receiving a copy of this Contract. You authorize Us to accept Your facsimile or electronic signature on this Contract. You agree that Your facsimile signature or electronic signature on this Contract will have the same legal force and effect as Your original signature, regardless of whether transmitted to Us through facsimile, electronic mail, scanned copy or other means, and regardless of whether Your assent to the terms of this Contract was made through the signing of this Contract, the use of keypad, mouse or other device to select an item, button, icon or similar act or action to indicate Your agreement and acceptance of the terms hereof.

**1. DEFINITIONS.** "You" or "Your" means each borrower and each other person or entity who agrees to pay this Note and therefore agrees to the terms of this Note. "We" or "Us" means Performance Finance, a division of Evergreen Bank Group, an Illinois-chartered bank, sometimes referred to as the "Lender" and including its successors and assigns. The terms, "Contract," "Agreement," and "Note" are used interchangeably herein and have the same meaning throughout this document.

**2. APPLICABLE LAWS.** The laws of the state where Lender's lien has been recorded applies as to matters regarding Lender's security interest in the Collateral. With respect to all other matters, including as to the rate of interest and other related fees due and owing under this Contract, the laws of the United States and the laws of the State of Illinois shall apply to the greatest extent permitted by applicable law.

**3. BORROWER PROMISES.** All Borrowers acknowledge time is of the essence with this Contract and agree to make the payments required hereunder at the times required in this Contract. Each Borrower warrants that the information supplied to Lender in applying for credit and in the making of this Contract is true and correct; that the Collateral will only be used for personal, family or household purposes; that this Contract, and all signatures, are genuine in all respects; that all parties have the capacity to contract; that the Contract is duly executed with proper authority; that Borrower has no knowledge of any fact that would impair the validity of this Contract; and that the Collateral was sold to Borrower for his, her or its personal ownership and not for another person.

**4. PROTECTION OF COLLATERAL; LENDER'S LIEN.** You agree to pay Lender all You owe under this Contract even if the Collateral is damaged, destroyed or missing. You agree to keep the Collateral in good condition and repair. You agree not to remove the Collateral from the United States, and not to sell, gift, rent, lease or otherwise transfer any interest in the Collateral of this Contract without Lender's express written permission. You agree to protect the Collateral from claims of third persons and not to grant any lien or encumbrance on the Collateral. You agree not to expose the Collateral to misuse or confiscation and to maintain the Collateral at the place identified as Borrower's address on Page 1 of this Contract unless Lender agrees otherwise. You will make sure Lender's security interest is perfected and a lien on the Collateral is shown on the title, or other documentation acceptable to Lender. You agree to provide all acts, things and writings as Lender may at any time request to protect or enforce its rights in the Collateral and other collateral. You will not do anything to defeat Lender's lien. You expressly authorize Lender, or Lender's agent, to take any action necessary to perfect Lender's security interest in the Collateral, including, without limitation, the filing of a UCC-1 Financing Statement with respect to the Collateral in your name and without further action by You. If Lender pays any repair bills, storage costs, taxes, fines, DMV fees or other charges on or for the Collateral, (although Lender is not required to do so on Your behalf) You agree to repay the amount when Lender asks for it.

**5. SECURITY INTEREST.** To secure the indebtedness evidenced by this Contract, You grant, assign and convey to Lender a purchase money security interest in the Collateral stated on the first page of this Contract and any of the following items that are purchased and financed in connection with this Contract: (a) any accessories, equipment, and replacement parts installed on or accompanying the Collateral (as may be more fully described in the Bill of Sale for the Collateral); (b) any insurance premiums and charges for service or GAP products returned to Lender; and (c) any proceeds of insurance policies, service or GAP products on the Collateral (For purposes of this Contract, (a)-(c) are included in the term "Collateral"). The purchase money security interest is in addition to any other security interest or lien Lender holds or which you are required to provide as a condition of the Note. This secures payment of all amounts You owe on the Contract and on any transfer, renewal, or extension of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by law, the Collateral under this Contract also secures Your other obligations to Lender, whether now owing or incurred hereinafter.

**6. PAYMENTS.** Unless otherwise specified by Lender in writing, all payments by You under this Contract must be mailed to the address specified in the billing statements sent to You by Lender. Additional payment options by telephone or online may be available to You, but Lender reserves the right to charge a convenience fee for the use of these payment channels. All payments received by 5:00 p.m. Central Standard Time, Monday through Friday ("Business Day") will be credited to your account as of such Business Day. Payments received after 5:00 p.m. on any Business Day will be credited to Your account on the following Business Day. You understand and agree that all payments received by Lender will first be applied to accrued but unpaid interest, then to principal due on this Note and then to any Late Charges or other charges.

**7. TRUTH IN LENDING DISCLOSURES.** The amounts disclosed as "FINANCE CHARGE" and "TOTAL OF PAYMENTS" on the first page of this Contract have been computed on the assumption that all payments will be received on the exact scheduled due dates. If payments are made early, these amounts will decrease. Payments made after the due dates will increase these amounts. The amount of any increase or decrease will be reflected in the amount of the final payment, or may increase or reduce the number of payments necessary to pay the Contract in full. If You pay the loan in full or in part early, You will not be charged a penalty for such prepayment.

**8. LATE CHARGES AND OTHER CHARGES.** If we have not received the full amount of any payment by the end of ten (10) calendar days after it is due, You may be required to pay a late charge equal to five percent (5%) of the full amount of the scheduled payment ("Late Charge"). If any payment under this Agreement is made with a check, ACH transfer or other instrument that is dishonored for any reason, You agree to pay Us a returned item fee of Twenty-five dollars ($25) in addition to any other amount or charges You may owe Us ("Return Fee"). Other charges and fees may apply for extensions, deferrals and other requests you make of us during the course of this loan.

**9. PHYSICAL DAMAGE INSURANCE.** If required by Lender, You agree to have, and provide proof to Lender of, physical damage insurance covering loss or damage to the Collateral while any amounts owed by You under this Contract remain unpaid, showing Lender as "additional insured and loss payee." If at any time during the term of this Contract You do not have physical damage insurance covering the Collateral, We may, if We decide, buy insurance which covers our interest only. We are under no obligation to buy insurance, but may do so if We desire. If We buy insurance, We will let You know what type it is and the charge You must pay. We may either ask for immediate payment from You for the cost of such insurance or may add the insurance premium(s) to the unpaid principal amount on this Contract, interest will be charged on the insurance premium(s) at the Annual Percentage Rate disclosed in this Contract, and You agree to pay the insurance premium(s) with interest in equal installments along with the payments shown on the payment schedule. You understand and agree that if We purchase any physical damage insurance, We will be acting in our interest only. You further understand and agree that the purchased insurance will not contain any liability coverages (including, without limitation, for bodily injury or property damage caused to others), will only cover our interest in the Collateral, may have deductible amounts different

---

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

_Timothy J. Roser_      12/12/17
Borrower's Signature      Date      Co-Borrower's/Co-Signer's Signature      Date

than those in Your provided insurance, and may be more expensive than equivalent insurance which You could buy on Your own. You agree that We can purchase such insurance with coverage that will be retroactive to the date Your insurance terminated. You understand and agree that We may receive compensation or reimbursement in connection with such insurance. If the Collateral is lost or damaged, You agree that We can use any insurance settlement to repair the Collateral or to apply to Your debt, at our sole and absolute discretion. If any charge for required insurance is returned to Us, it may be credited to Your account or used to buy similar insurance or insurance which covers only our interest in the Collateral. Any refund on optional insurance or service/repair plan obtained by Us will be credited to Your account. Credits to Your account will be in the same manner as payments.

**10. DELAY IN ENFORCING RIGHTS; WAIVER.** To the greatest extent allowed by law, You waive presentment, demand for payment and notice of dishonor by Lender. Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, We may extend the time for making some payments without extending others. You agree not to send Us partial payments marked "paid in full", "with prejudice", "without recourse" or any similar restrictive endorsements. If You send these items to our address specified for payment, they shall not be deemed received and the endorsement will not be effective against Us even though We cash the checks on which such endorsements are contained.

**11. DEFAULT.** You will be in default under the Note or other parts of the Contract if any one or more of the following events occurs: (a) You fail to make a monthly payment within ten (10) calendar days of its due date or any other payment when due; (b) Lender reasonably believes You have provided Us false or misleading information in connection with this loan; (c) any Borrower or Co-signer dies or is declared incompetent; (d) You fail to pay or keep any other promise on any other loan You have with Us; (e) the Collateral is damaged or stolen; (f) You breach any agreement or covenant in this Contract; (g) You fail to obtain or maintain any insurance required under this Contract; (h) any Borrower or Co-signer institutes bankruptcy proceedings or any such proceedings are instituted against any Borrower or Co-Signer; or (i) Lender reasonably believes the prospects for payment of all amounts due on this Note are impaired or that the balance of payments due hereunder has become insecure in whole or in part.

**12. REMEDIES UPON DEFAULT.** If You do not pay Us as agreed or are otherwise in default, or if an event occurs substantially reducing the value of the Collateral, materially impairing Your prospects to pay under this Contract, We may, at our option, declare the entire unpaid principal amount immediately due and owing. You will, following such event, at our request, deliver the Collateral to a place We designate that is reasonably convenient to You. At our option following a default, in accordance with applicable law, We can repossess the Collateral from You subject to any right to cure default You may have. To take the Collateral, We can go on Your land or anywhere the Collateral is located so long as it is done peacefully. If there are any personal belongings in the Collateral such as clothing or tools, We may store them. However, We do not have to store them and will not be responsible for the items beyond what the law may require. Any accessories, equipment or replacement parts will remain with the Collateral. We may sell the Collateral at the time and place of our choosing at a private or public sale or through any broker.

**13. GETTING THE COLLATERAL BACK AFTER REPOSSESSION.** If We repossess the Collateral We will send You a notice of sale disclosing that You have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, You may have the right to reinstate the account by paying past due amounts plus any late charges,

our agents have incurred. We will use the net proceeds of the sale to pay all or part of Your debt. If You owe less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. If You owe more than the net proceeds of the sale, You will pay Us the difference between the net proceeds of the sale and what You owe when We ask for it. If You do not pay this amount when asked, We will charge interest on it. If You have wrongfully damaged the Collateral, You will be liable to Us for the damages.

**14. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent permitted by applicable law, if We hire an attorney other than our salaried employee to collect what You owe, You agree to pay our reasonable attorneys' fees, including any incurred in connection with any bankruptcy or appellate proceeding, and any court costs and out of pocket expenses, whether or not the suit is filed, plus interest on such sums at the highest rate allowed by law. Additionally, to the greatest extent permitted by applicable law, You agree to pay all fees and costs incurred by us related to any third-party collection firm We retain to collect any amounts that You owe to Us under this Contract, including, without limitation, any and all contingency or percentage-based fees charged by such firm. Furthermore, You agree to reimburse Us for any costs we incur, in our discretion, in order to locate You or the Collateral in the event that we are required to retain a third-party for such services.

**15. CREDIT REPORTING.** You agree that We may request a consumer credit report in connection with Your application and in connection with any update, renewal, or extension of credit for which an application is made.

**16. NOTICE OF LIMITED AGENCY.** The dealer has no authority to approve or to make this loan. The dealer is not our agent in connection with the sale of the Collateral You are purchasing with the proceeds of this loan. The dealer is only authorized to prepare the loan documents and to obtain Your signatures.

**17. WARRANTY DISCLAIMER.** You understand that Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by Lender, covering the Collateral.

**18. RELEASE OF LIEN.** Upon Your payment in full of the amounts due hereunder, We will release our lien, if any, on the Collateral. You are responsible for our costs and for any costs charged by any public officials for such release.

**19. CUSTOMER IDENTIFICATION.** To help the government fight terrorism and money laundering, We are required to obtain, verify and record information identifying each Borrower under this Contract. We will therefore ask for your name, address, date of birth and other information that will allow us to identify You. We may ask to see Your driver's license or other identifying documents.

**20. MISCELLANEOUS.** You agree to be bound by any document provided by Us that changes the terms and conditions of this Contract due to state or federal law requirements. Any change in the terms or conditions of this Contract must be in a writing signed by Lender. No oral changes are binding. You may not assign this Contract, or Your obligations hereunder without our express prior written consent. We may assign this Contract in our sole discretion and any assignee shall be entitled to all of the rights and remedies of Lender hereunder. This Contract contains the entire Contract between You and Us. If any part of this Contract is invalid, all other parts of the Contract will remain valid.

---

**Notice: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BORROWER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BORROWER SHALL NOT EXCEED AMOUNTS PAID BY THE BORROWER HEREUNDER.**

Do not sign this Contract before You read it. You are entitled to a copy of this Contract. You may, at any time, prepay the unpaid balance of this Contract.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS ENTIRE CONTRACT BEFORE YOU SIGN IT.**

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

| _Timothy J. Roser_ | 12/12/17 | | |
|---|---|---|---|
| Borrower's Signature | Date | Co-Borrower's/Co-Signer's Signature | Date |

# INDIANA CERTIFICATE OF TITLE




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HARLEY-DAVIDSON | FXD | MC | 2009 | 1HD1GM4149K323218 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | 14805062000206/IN | 10/28/17 | 04/12/18 | $0.00 |

**OWNER(S) NAME**  **ODOMETER/BRAND**  **BRAND(S)**

TIMOTHY J ROSEN
417 WOODS EDGE CT
WEST LAFAYETT IN 479065731

031318/ACTUAL



**MAILING ADDRESS**   003094   **ADDITIONAL OWNER(S)**

PERFORMANCE FINANCE
10509 PROFESSIONAL CIRCLE
RENO NV 89521




**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PERFORMANCE FINANCE
10509 PROFESSIONAL C
RENO NV 89521

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G4337800

**TITLE NUMBER**
18805079000258

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**PLEASE TYPE OR PRINT INFORMATION**

**REQUIREMENTS:** Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failing to complete this form, or providing any false statements may result in fines and/or imprisonment.

**TO SELLER:** Seller is responsible for completing this form. If title is issued in more than one name, all owners listed on the title must sign as Seller. Do not sign as a Seller until all areas of the assignment are completed. Any person signing on behalf of a company must state their position.

**TO PURCHASER:** You must apply for a new certificate of title within forty-five days of the date of purchase, or pay an administrative penalty. All liens, mortgages or other encumbrances shown on the face of this title must be released before you apply for a new title.

---

I/we, as Seller, certify that to the best of my/our knowledge the information contained on this document is true and correct and that the odometer now reads and is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked.

☐ No Tenths    MILES

☐ The odometer reading stated is in excess of its mechanical limits.    ☐ The odometer reading is not actual mileage WARNING ODOMETER DISCREPANCY.

For value received, I/we hereby sell, assign and transfer the vehicle described on this document and warrant title to Purchaser.

### SELLER INFORMATION

| Signature of Seller | Position (if applicable) |
| Signature of Seller | Position |
| Printed Name of Seller | Dealer Number (if applicable) |
| Printed Name of Seller | |
| Date of Sale (month, day, year) | Selling Price | Trade in Price (if any) | Total Price Paid |

### PURCHASER INFORMATION

| Name of Purchaser | Dealer Number |
| Address | |
| City | State | Zip Code |
| Holder of lien, mortgage or encumbrance (if applicable) | |
| Address | |
| City | State | Zip Code |

I AM AWARE OF THE ABOVE ODOMETER CERTIFICATION MADE BY THE SELLER(S)

| Signature of Purchaser | Printed Name of Purchaser |

---

### FIRST RE-ASSIGNMENT BY REGISTERED DEALER ONLY

I/we, as Seller, certify that to the best of my/our knowledge the information contained on this document is true and correct and that the odometer now reads and is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked.

☐ The odometer reading stated is in excess of its mechanical limits.    ☐ The odometer reading is not actual mileage WARNING ODOMETER DISCREPANCY.

| Name of Dealership | |
| Signature | |
| Printed Name | |
| Position | Dealer Number |
| Date of Sale (month, day, year) | |

| Name of Purchaser | Dealer Number |
| Address | |
| City | State | Zip Code |
| Holder of lien, mortgage or encumbrance (if applicable) | |
| Address | |
| City | State | Zip Code |

I AM AWARE OF THE ABOVE ODOMETER CERTIFICATION MADE BY THE SELLER(S)

| Signature of Purchaser | Printed Name of Purchaser |

---

### SECOND RE-ASSIGNMENT BY REGISTERED DEALER ONLY

I/we, as Seller, certify that to the best of my/our knowledge the information contained on this document is true and correct and that the odometer now reads and is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked.

☐ The odometer reading stated is in excess of its mechanical limits.    ☐ The odometer reading is not actual mileage WARNING ODOMETER DISCREPANCY.

| Name of Dealership | |
| Signature | |
| Printed Name | |
| Position | Dealer Number |
| Date of Sale (month, day, year) | |

| Name of Purchaser | Dealer Number |
| Address | |
| City | State | Zip Code |
| Holder of lien, mortgage or encumbrance (if applicable) | |
| Address | |
| City | State | Zip Code |

I AM AWARE OF THE ABOVE ODOMETER CERTIFICATION MADE BY THE SELLER(S)

| Signature of Purchaser | Printed Name of Purchaser |

---

### THIRD RE-ASSIGNMENT BY REGISTERED DEALER ONLY

I/we, as Seller, certify that to the best of my/our knowledge the information contained on this document is true and correct and that the odometer now reads and is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked.

☐ The odometer reading stated is in excess of its mechanical limits.    ☐ The odometer reading is not actual mileage WARNING ODOMETER DISCREPANCY.

| Name of Dealership | |
| Signature | |
| Printed Name | |
| Position | Dealer Number |
| Date of Sale (month, day, year) | |

| Name of Purchaser | Dealer Number |
| Address | |
| City | State | Zip Code |
| Holder of lien, mortgage or encumbrance (if applicable) | |
| Address | |
| City | State | Zip Code |

I AM AWARE OF THE ABOVE ODOMETER CERTIFICATION MADE BY THE SELLER(S)

| Signature of Purchaser | Printed Name of Purchaser |

---

**NO ADDITIONAL RE-ASSIGNMENTS PERMITTED**

VOID